IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| O'LILLIAN BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | |
| v. | ) | 1:15-CV-03232-MHC-CMS |
| | ) | |
| METROPOLITAN ATLANTA | ) | |
| RAPID TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MARTA'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**

COMES NOW Defendant Metropolitan Atlanta Rapid Transit Authority ("MARTA"), by and through its undersigned counsel of record, and pursuant to Local Rule 56.1(B), submit their Statement of Material Facts as to which there is no genuine issue to be tried as follows:

**STATEMENT OF MATERIAL FACTS**

1. Baker began her employment at MARTA as a Transit Police Officer, effective November 14, 2004.  *See*, Defendant MARTA MSJ Exhibit 28 – Offer of Employment.

2. She was thereafter promoted to Sr. Transit Police Officer in or about November 2006.  *See*, Defendant MARTA MSJ Exhibit 8 – HR Data Forms.

3. Plaintiff held the position of Sr. Transit Police Officer until she retired, effective December 1, 2014.  *See*, Defendant MARTA MSJ Exhibit 10 – Baker Termination Records.

4. Wanda Dunham is the Assistant General Manager/Chief of Police & Emergency Management for MARTA.  Dunham Affidavit, ¶ 2.

5. Dunham is an African-American female, age 54. Dunham Affidavit, ¶ 34.

6. In her capacity as Chief of Police, Dunham oversees the general operation and administration of the Police Department, enforcement of MARTA Police General Orders, policies and practices, and MARTA's general policies and practices as it relates to Police Department personnel, and overseeing the Authority's emergency preparedness program.  Dunham Affidavit, ¶ 2.

7. Although supervisory authority may be delegated, final authority within the Department and as to each officer remains with the Chief of Police. Dunham Affidavit, ¶ 2; Defendant MARTA MSJ Exhibit 3 – Organizational Chart.

8. Dunham is routinely advised of and reviews the decisions of MARTA Police supervisory personnel as it relates to officers within their direct chain of command, including those decisions relating to former Officer Baker. Dunham Affidavit, ¶ 2.

9. Officers or Police Department personnel who take issue with or wish to dispute an employment action or decision, including but not limited to disciplinary actions, have the option of appealing the decision or raising the issue through their chain of command. Dunham Affidavit, ¶ 7.

10. In addition, Dunham maintains an open door policy as it relates to hearing matters of concern for any police personnel. *See*, Defendant MARTA MSJ Exhibit 6 – Open Door Policy (General Order # 12-103).

11. Dunham has reviewed a number of decisions or actions relating to former Officer Baker over the course of her career at MARTA. Dunham Affidavit, ¶ 8.

12. Baker's disciplinary history is as follows:

- 6/18/06: Baker received a written counseling for accumulating her third sick occurrence in a rolling calendar year. I reviewed the decision and overturned the disciplinary action.

- 9/8/07: Baker received a written counseling from then-supervisor, Sgt. Meadows, for failing to report for duty (AWOL); upon Baker's appeal of the decision, I overturned the disciplinary action.

- 3/14/08: Baker received a written counseling when she reported for duty without her weapon and had to go home to retrieve it.

- 5/13/09: A complainant alleged that Baker was rude; that complaint was deemed to be unfounded. Lt. Williams and Deputy Chief Dorsey (on my behalf) indicated their agreement with the finding.

- 8/16/10: A complainant alleged that Baker was rude; Baker was exonerated after investigation. Lt. Williams, Major Easterling, and myself agreed with the finding.

- Again in August, 2010: A complainant alleged that Baker was rude; that complaint was also deemed to be unfounded. Lt. Williams and Deputy Chief Dorsey (on my behalf) indicated their agreement with the finding.

- 7/15/11: A complainant alleged that Baker was rude; that complaint was not sustained. Major Easterling and Deputy Chief Dorsey (on my behalf) indicated their agreement with the finding.

- 2/17/12: Baker received a Written Sanction after she conducted a fare evasion investigation without sufficient reasonable suspicion.

- 11/20/13: A complainant alleged that Baker failed to enforce the "ride with respect" policy after responding to a complaint of disorderly patrons aboard the train; she was exonerated. Deputy Chief Dorsey (on my behalf) indicated agreement with the finding.

- 5/20/14: Baker received a written counseling after accumulating her 3rd sick occurrence.

- 6/13/14: Baker use of force was reviewed after she shot a dog; she was deemed to be exonerated; Major Easterling and myself agreed with the determination.

*See*, Defendant MARTA MSJ Exhibit 4 – Baker Disciplinary Action Recommendation Forms & Related Documents; Dunham Affidavit, ¶ 8.

13. Dunham testified that she has no knowledge of Baker being discriminated against on the basis of her age and gender; that throughout her entire career, despite Baker approached Dunham to address issues or concerns, however, Baker had never advised her of any complaint or concern that she was being subjected to disparate treatment on the basis of her age or gender. Dunham Affidavit, ¶ 9.

14. Dunham testified further that she was unaware of Baker raising any such claims of gender or age discrimination to any supervisory personnel in her chain of command.  Dunham Affidavit, ¶ 9.

15. Decisions relating to FMLA leave approval are made within the Human Resources department/Benefits Office.  Dunham Affidavit, ¶ 11.

16. Dunham and Easterling both testified that they do not make any decisions approving or denying FMLA leave; nor do any Police supervisory personnel (i.e. supervisors within Baker's chain of command) make any such decisions related to approving or denying FMLA. Dunham Affidavit, ¶ 11; Easterling Affidavit, ¶ 8.

17. As a MARTA police officer, Baker was subject to annual evaluations.  Dunham Affidavit, ¶ 12.

18. Officers are evaluated upon, amongst other measures, their attendance over the course of the review period.  Dunham Affidavit, ¶ 12.

19. These evaluations are used to determine the Officer's eligibility for merit-based step increases in pay.  Dunham Affidavit, ¶ 12.

20. In addition to the FMLA and other Authority-wide leave policies, MARTA Police Officers are subject to General Order 26-108 (Attendance Policy).  Dunham Affidavit, ¶ 13.

21. The Attendance policy provides that officers who are absent from their regular duties more than 1,560 hours during a rolling two (2) year period for reasons *other than* normal days off, approved PTO, training, funeral leave, jury duty, FMLA, military obligations, or other exceptions as determined by the Chief of Police, are subject to having their employment status terminated. Dunham Affidavit, ¶ 13; Defendant MARTA MSJ Exhibit 7 - General Order 26-108 (Attendance Policy).

22. Dunham testified that based on the Attendance policy, Officers' use of FMLA leave or other approved leaves are expressly not held against them in any measurable or meaningful way as it relates to their evaluation and forward progression in the Authority. Dunham Affidavit, ¶ 13.

23. Baker has received a raise at least each year of her employment (in conjunction with her annual review), such that as of the time she retired, Baker was receiving the maximum salary amount for her pay grade. *See*, Defendant MARTA MSJ Exhibit 8 – HR Data Forms; Dunham Affidavit, ¶ 14.

24. Dunham testified that she had no knowledge of any police personnel discriminating against, retaliating against, or interfering with Baker as it relates to her use of FMLA; that she likewise had no knowledge of Baker being "berated," "harassed," "subjected to ridicule," or "threatened with disciplinary

action" because of her use of FMLA leave; and that she was unaware of Baker being referred to as "the Queen of FMLA" or "Mother <expletive> on FMLA." These matters have never been brought to my attention by former Officer Baker or anyone else.   Dunham Affidavit, ¶ 15.

25. Dunham testified that she was aware there have been occasions where Baker may have had issues with her eligibility for leave, however, stated that decisions concerning eligibility for FMLA leave are made within the Office of Employee Benefits, not by her or any MARTA Police personnel. Dunham Affidavit, ¶ 16.

26. Dunham testified she was aware there has been one or more occasions wherein MARTA Benefits personnel have contacted MARTA Police personnel (Baker's chain of command) to clarify or correct some of the coding entered on Baker's "Individual Lost Time Records."

27. All Officers are responsible for entering and recording their own time sheets on an online database called "Oracle." Dunham Affidavit, ¶ 18.

28. Once the officers' time is entered, the supervising Lieutenant cross-checks their attendance records and approves their time. Dunham Affidavit, ¶ 18.

29. The supervisory Lieutenant in their chain of command will then complete an "Individual Lost Time Record" for each month, which includes specific

coding for the Officer's work status or various types of leave on each day. *See*, Defendant MARTA MSJ Exhibit 11 – Baker's Individual Lost Time Records from 2011 to 2014; Dunham Affidavit, ¶ 18.

30. Dunham testified that in instances requiring clarification of Police time records, police supervisory personnel has worked together with the Benefits Office to try to resolve any issues pertaining to Baker's eligibility for leave. Dunham Affidavit, ¶ 19; *see* also, Defendant MARTA MSJ Exhibit 12 – Various E-mails concerning Baker's eligibility for leave.

31. In or about January 2011, Baker complained that Sgt. Meadows failed to notify Baker's appropriate chain of command of her need for Emergency PTO leave. That matter was investigated and Sgt. Meadows was issued a Written Counseling for the incident. Major Easterling and Deputy Chief Dorsey (acting on my behalf) agreed with the determination. Dunham Affidavit, ¶ 20; *See*, Defendant MARTA MSJ Exhibit 13 – Sgt. Meadows Disciplinary Action Form.

32. In or about November 2011, Baker complained that she believed that Major Easterling had recorded the interview wherein she was questioned about the incident with Meadows. However, Deputy Chief Dorsey investigated the matter, and his investigation revealed that there was no record of a

recording. *See*, Defendant MARTA MSJ Exhibit 14 – Dorsey's Investigation Report/Findings regarding Easterling.

33. Also in November 2011, Baker filed three complaints against Lt. Williams, stating as follows: (1) on April 18, 2011, Williams attempted to assign Baker an extra shift (referred to as being "forced"), however Baker complained she did not feel well, Williams assigned Sgt. Donaldson to replace her, however Baker refused; (2) on May 2, 2011, Williams advised Baker it was again her turn to be assigned an extra shift the next day on 5/3/11, however, instead Baker stated that she had a doctor's appointment; according to Baker, Williams inquired as to whether Baker could go to the appointment prior to the shift which started in the afternoon and allegedly screamed at her; and (3) on or about September 17, 2011, Williams advised Baker it was again her turn to be assigned an extra shift, however, instead Baker stated to her supervisor "if you try to force me, I will go out on FMLA."

34. Deputy Chief Dorsey investigated each of Baker's complaints, but determined that all three were "Not Sustained" based upon statements obtained from Baker, Williams, and other witnesses. *See*, Defendant MARTA MSJ Exhibit 15 – Dorsey's Investigation Report/Findings regarding Williams.

35. Following Dorsey's investigation of Baker's Complaints, I met with former Officer Baker to discuss her concerns. Upon my review of the investigation records, I advised Baker that I was satisfied that the investigation had been thorough and upheld Dorsey's findings.  *See*, <u>Defendant MARTA MSJ Exhibit 16 – Letter to Baker from Chief Dunham, dated 2/29/12.</u>

36. In or about December 2012, Baker was in the process of returning to work from an extended leave period, followed by a light duty assignment (approximately 125 days total).  <u>Defendant MARTA Exhibit 25</u>.

37. As a result of her absence from regular duty for over 90 days, and pursuant to MARTA policy, Baker was required to undergo a Return-to-Work exam. *See*, <u>Defendant MARTA MSJ Exhibit 17 – Return to Work/Reinstatement Policy.</u>

38. Sgt. Dye is the Sergeant over Background and Recruitment for MARTA Police and is in charge of administering officers' return-to-work clearance assessments. Dunham Affidavit, ¶ 25.

39. Baker raised issue with Dye concerning the fact that she was subjected to "Pre-Employment" assessments, including drug and alcohol analysis, vision, and hearing assessment, as well as routine background, criminal history, and drivers history checks.  Dunham Affidavit, ¶ 26.

40. Sgt. Dye reported that Baker had made inquiry to her, and questioned the fact that a fellow Officer (Frazier), had not been subject to the same Pre-Employment assessments. Dunham Affidavit, ¶ 27.

41. Dunham testified that because Major Easterling was the Administration Lieutenant at the time, she was Sgt. Dye's supervisor, the matter was appropriately escalated up the chain of command for Easterling's review and handling. Dunham Affidavit, ¶ 28.

42. Major Easterling reviewed the matter and determined that Officer Frazier was not required to undergo the same assessment because he had not been absent 90 days or more. *See*, Defendant MARTA MSJ Exhibit 19 – Letter to Baker from Easterling.

43. A Training Bulletin was issued, clarifying the "Return to Work After Extended Absence Procedures and Policies." *See*, Defendant MARTA MSJ Exhibit 20 – Return to Work Training Bulletin, issued 6/21/13; Dunham Affidavit, ¶ 29

44. Baker complained to MARTA's Office of Diversity ("DEO") that she felt the memorandum was retaliatory in nature. Dunham Affidavit, ¶ 30.

45. The DEO investigated Baker's complaint, including obtaining a statement from me and others, and determined that the complaint was unsubstantiated. Dunham Affidavit, ¶ 30; Defendant MARTA Exhibit 5.

46. Dunham testified that on or about November 1, 2014, Baker's then chain of command, Major Shavers, advised her that she had received a letter of resignation from Officer Baker.  *See*, Defendant MARTA MSJ Exhibit 9 – Baker Resignation Letter, dated 11/1/14; Dunham Affidavit ¶ 5.

47. Dunham testified that Baker at no time indicated she was retiring because she felt she was being discriminated against on the basis of her age, gender, or use of FMLA.  Dunham Affidavit, ¶ 31; Defendant MARTA MSJ Exhibit 10.

48. Dunham testified that under her leadership, MARTA Police Services has never discriminated against any officer on the basis of their age, gender, or FMLA use; that their employment decisions are based on legitimate bases, including but not limited to employee qualifications and performance; they simply do not discriminate on the basis of age, race, gender, or any other illegal basis whatsoever.   Dunham Affidavit, ¶ 32.

49. Ms. Baker has identified herself as an African-American female born on 5/30/1956. Dunham Affidavit, ¶ 33.

50. At the time of Baker's retirement, she was 58 years of age. Dunham Affidavit, ¶ 33.

51. MARTA Police Services Department currently has sixty-one (61) officers employed who are over the age of 50, including twelve (12) officers that are age 58 or older;  Since Baker's departure (11/14/14), Police Services have hired no less than thirteen (13) officers *over* the age of 50, including three (3) officers that are age 58 or older. Dunham Affidavit, ¶ 36, 37

52. MARTA Police Services currently employs eighty-eight (88) female officers; Since Baker's departure, we have hired at least twelve (12) female officers. Dunham Affidavit, ¶ 37.

53. Dunham testified that throughout her career as Chief of Police they have had numerous officers utilize FMLA leave at various times; yet they have never taken any adverse action against any officer based upon their use of FMLA leave.   Dunham Affidavit, ¶ 38

54. Dunham testified MARTA Police likewise have never taken any adverse action against Officer Baker based upon her use of FMLA leave.   Dunham Affidavit, ¶ 39.

Respectfully submitted, this 9th day of May, 2016.

MOZLEY, FINLAYSON & LOGGINS, LLP

/s/Janine D. Willis
John R. Lowery
Georgia Bar No. 460175
Janine D. Willis
Georgia Bar No. 390356
*Counsel for Defendant MARTA*

One Premier Plaza
5605 Glenridge Drive, Suite 900
Atlanta, GA 30342
(404) 256-0700 telephone
(404) 250-9355 facsimile
jlowery@mfllaw.com
jwillis@mfllaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed a true and correct copy of the within and foregoing **DEFENDANT MARTA'S STATEMENT OF MATERIAL FACTS  IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically deliver notice of such filing to all attorneys of record, as follows:

**Regina Molden, Esq.**
**Janne McKamey, Esq.**

This 9th  day of May, 2016

/s/ Janine D. Willis
Janine D. Willis
Georgia Bar No. 390356

MOZLEY, FINLAYSON & LOGGINS, LLP
One Premier Plaza
5605 Glenridge Drive, Suite 900
Atlanta, GA 30342
(404) 256-0700 telephone
(404) 250-9355 facsimile
jlowery@mfllaw.com
jwillis@mfllaw.com