**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA**

| | | |
|---|---|---|
| **O'LILLIAN BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No.:** |
| **v.** | ) | **1:15-CV-03232-MHC-CMS** |
| | ) | |
| **METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT MARTA'S STATEMENT OF MATERIAL FACTS**

COMES NOW Plaintiff O'Lillian Baker ("Baker"), by and through her undersigned counsel of record, and pursuant to Local Rule 56.1, and submits her response to Defendant's Statement of Material Facts as follows:

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**

1. Baker began her employment at MARTA as a Transit Police Officer, effective November 14, 2004. *See*, Defendant MARTA MSJ Exhibit 28 – Offer of Employment.

**Response: Denied. Plaintiff began employment at MARTA on November 15, 2004. *See*, (Baker Aff. ¶2, Baker Exh. 1 "Human Resources Data Form – New Hire")**

2. She was thereafter promoted to Sr. Transit Police Officer in or about

November 2006.  *See*, Defendant MARTA MSJ Exhibit 8 – HR Data Forms.

**Response:  Admitted.**

3.     Plaintiff held the position of Sr. Transit Police Officer until she retired, effective December 1, 2014.  *See*, Defendant MARTA MSJ Exhibit 10 –Baker Termination Records.

**Response:  Admitted.**

4.     Wanda Dunham is the Assistant General Manager/Chief of Police & Emergency Management for MARTA.  Dunham Affidavit, ¶ 2.

**Response:  Admitted.**

5.     Dunham is an African-American female, age 54. Dunham Affidavit, ¶ 34.

**Response:  Admitted that Dunham is an African-American female.  However, Plaintiff has no personal knowledge of her age.**

6.     In her capacity as Chief of Police, Dunham oversees the general operation and administration of the Police Department, enforcement of MARTA Police General Orders, policies and practices, and MARTA's general policies and practices as it relates to Police Department personnel, and overseeing the Authority's emergency preparedness program. Dunham Affidavit, ¶ 2.

**Response:   Plaintiff has no personal knowledge of all of Dunham's work responsibilities.**

7.     Although supervisory authority may be delegated, final authority within the

Department and as to each officer remains with the Chief of Police. Dunham Affidavit, ¶ 2; Defendant MARTA MSJ Exhibit 3 – Organizational Chart.

**Response: Admitted.**

8. Dunham is routinely advised of and reviews the decisions of MARTA Police supervisory personnel as it relates to officers within their direct chain of command, including those decisions relating to former Officer Baker. Dunham Affidavit, ¶ 2.

**Response: Plaintiff has no personal knowledge of Dunham's work responsibilities.**

9. Officers or Police Department personnel who take issue with or wish to dispute an employment action or decision, including but not limited to disciplinary actions, have the option of appealing the decision or raising the issue through their chain of command. Dunham Affidavit, ¶ 7.

**Response: Admitted.**

10. In addition, Dunham maintains an open door policy as it relates to hearing matters of concern for any police personnel. *See*, Defendant MARTA MSJ Exhibit 6 – Open Door Policy (General Order # 12-103).

**Response: Admitted.**

11. Dunham has reviewed a number of decisions or actions relating to former Officer Baker over the course of her career at MARTA. Dunham Affidavit, ¶ 8.

**Response: Admitted.**

12. Baker's disciplinary history is as follows:

- 6/18/06: Baker received a written counseling for accumulating her third sick occurrence in a rolling calendar year. I reviewed the decision and overturned the disciplinary action.

**Response: Admitted. However, the written counseling was overturned because there was documentation from Baker's doctor, which negated the written counseling under MARTA's own policies. This was far from special treatment.**

- 9/8/07: Baker received a written counseling from then-supervisor, Sgt. Meadows, for failing to report for duty (AWOL); upon Baker's appeal of the decision, I overturned the disciplinary action.

**Response: Admitted. However, it was shown that Sgt. Meadows did give Baker permission to take off work. Once again Dunham's decision was based upon proven facts pertinent to the written counseling. (Complaint ¶18, Baker Aff. ¶ _____).**

- 3/14/08: Baker received a written counseling when she reported for duty without her weapon and had to go home to retrieve it.

**Response: Admitted.**

- 5/13/09: A complainant alleged that Baker was rude; that complaint was deemed to be unfounded. Lt. Williams and Deputy Chief Dorsey (on my behalf)

indicated their agreement with the finding.

**Response: Admitted.**

- 8/16/10: A complainant alleged that Baker was rude; Baker was exonerated after investigation. Lt. Williams, Major Easterling, and myself agreed with the finding.

**Response: Admitted.**

- Again in August, 2010: A complainant alleged that Baker was rude; that complaint was also deemed to be unfounded. Lt. Williams and Deputy Chief Dorsey (on my behalf) indicated their agreement with the finding.

**Response: Admitted.**

- 7/15/11: A complainant alleged that Baker was rude; that complaint was not sustained. Major Easterling and Deputy Chief Dorsey (on my behalf) indicated their agreement with the finding.

**Response: Admitted.**

- 2/17/12: Baker received a Written Sanction after she conducted a fare evasion investigation without sufficient reasonable suspicion.

**Response: Admitted that was the finding, however, Baker was unable to appeal this decision due to the unexpected and tragic death of her brother.**

- 11/20/13: A complainant alleged that Baker failed to enforce the "ride with respect" policy after responding to a complaint of disorderly patrons aboard the

train; she was exonerated. Deputy Chief Dorsey (on my behalf) indicated agreement with the finding.

**Response: Admitted.**

- 5/20/14: Baker received a written counseling after accumulating her 3rd sick occurrence.

**Response: Denied. Baker was on extended funeral leave following the death of her mother when she was given this written counseling, not sick leave. Additionally, it was not given in a timely fashion being several months after the funeral leave was taken. (Baker Aff. ¶ 12).**

- 6/13/14: Baker use of force was reviewed after she shot a dog; she was deemed to be exonerated; Major Easterling and myself agreed with the determination. *See*, Defendant MARTA MSJ Exhibit 4 – Baker Disciplinary Action Recommendation Forms & Related Documents; Dunham Affidavit, ¶ 8.

**Response: Admitted.**

13. Dunham testified that she has no knowledge of Baker being discriminated against on the basis of her age and gender; that throughout her entire career, despite Baker approached Dunham to address issues or concerns, however, Baker had never advised her of any complaint or concern that she was being subjected to disparate treatment on the basis of her age or gender. Dunham Affidavit, ¶

**Response:  Denied.  Baker verbally informed Dunham and Chief Dorsey of instances where she was being discriminated and harassed because of her age on numerous occasions.  Additionally, Baker filed a complaint against Sgt. Davis and submitted it to Maj. Lindahl because she was concerned about it being handled fairly by Lt. Jackson.  However the complaint was sent back to Lt. Jackson and nothing was done. (Baker Aff. ¶ 15, Baker Exh. 7).**

14.    Dunham testified further that she was unaware of Baker raising any such claims of gender or age discrimination to any supervisory personnel in her chain of command.   Dunham Affidavit, ¶ 9.

**Response:  Denied.  Baker verbally informed Dunham and Chief Dorsey of instances where she was being discriminated and harassed because of her age on numerous occasions.  (Baker Aff. ¶ 5, 6, 15).**

15.    Decisions relating to FMLA leave approval are made within the Human Resources department/Benefits Office.  Dunham Affidavit, ¶ 11.

**Response:  Admitted.**

16. Dunham and Easterling both testified that they do not make any decisions approving or denying FMLA leave; nor do any Police supervisory personnel (i.e. supervisors within Baker's chain of command) make any such decisions related to approving or denying FMLA. Dunham Affidavit, ¶ 11; Easterling Affidavit, ¶ 8.

**Response:  Admitted.  However they both demanded that I write a statement**

**as to why I exercised FMLA on one occasion.**

17.    As a MARTA police officer, Baker was subject to annual evaluations. Dunham Affidavit, ¶ 12.

**Response: Admitted.**

18. Officers are evaluated upon, amongst other measures, their attendance over the course of the review period.  Dunham Affidavit, ¶ 12.

**Response:  Admitted, however approved FMLA absences were being listed as absences on performance evaluations, and when pointed out by Baker to her supervisors, she was ignored.  However when Ofcr. Bynum, a younger white female police officer, pointed it out, hers was changed. When I complained to several supervisors about my FMLA being listed on my performance evaluation I was told that Maj. Easterling said to list it.  I eventually refused to sign my evaluation because FMLA was listed as absences on it. (Baker Aff. ¶ 14)**

19.    These evaluations are used to determine the Officer's eligibility for merit-based step increases in pay.  Dunham Affidavit, ¶ 12.

**Response:  Admitted.**

20.    In addition to the FMLA and other Authority-wide leave policies, MARTA Police Officers are subject to General Order 26-108 (Attendance Policy). Dunham Affidavit, ¶ 13.

**Response:  Admitted.**

21.    The  Attendance  policy  provides  that  officers  who  are  absent  from  their regular  duties  more  than  1,560  hours  during  a  rolling  two  (2)  year  period  for reasons *other than* normal days off, approved PTO, training, funeral leave, jury duty, FMLA, military obligations, or other exceptions as determined by the Chief of Police, are subject to having their employment status terminated. Dunham Affidavit, ¶ 13;  Defendant  MARTA  MSJ  Exhibit  7  -  General  Order 26-108 (Attendance Policy).

**Response:  Admitted.**

22.    Dunham  testified  that  based  on  the  Attendance  policy,  Officers'  use  of FMLA leave or other approved leaves are expressly not held against them in any measurable  or  meaningful  way  as  it  relates  to  their  evaluation  and  forward progression in the Authority.  Dunham Affidavit, ¶ 13.

**Response:  Admitted that is what Dunham's affidavit states.**

23.    Baker  has  received  a  raise  at  least  each  year  of  her  employment  (in conjunction with her annual review), such that as of the time she retired, Baker was receiving  the  maximum  salary  amount  for  her  pay  grade.    *See*,  Defendant MARTA MSJ Exhibit 8 – HR Data Forms; Dunham Affidavit, ¶ 14.

**Response:  Admitted.**

24.    Dunham  testified  that  she  had  no  knowledge  of  any  police  personnel

discriminating against, retaliating against, or interfering with Baker as it relates to her use of FMLA; that she likewise had no knowledge of Baker being "berated," "harassed," "subjected to ridicule," or "threatened with disciplinary action" because of her use of FMLA leave; and that she was unaware of Baker being referred to as "the Queen of FMLA" or "Mother <expletive> on FMLA." These matters have never been brought to my attention by former Officer Baker or anyone else.  Dunham Affidavit, ¶ 15.

**Response:  Denied.  Baker verbally informed Dunham and Chief Dorsey of instances where she was being discriminated and harassed because of her age on numerous occasions.  (Complaint ¶ 21, Baker Aff. ¶ 6, 15, 16).**

25.    Dunham testified that she was aware there have been occasions where Baker may have had issues with her eligibility for leave, however, stated that decisions concerning eligibility for FMLA leave are made within the Office of Employee Benefits, not by her or any MARTA Police personnel. Dunham Affidavit, ¶ 16.

**Response:  Admitted.**

26.    Dunham testified she was aware there has been one or more occasions wherein MARTA Benefits personnel have contacted MARTA Police personnel (Baker's chain of command) to clarify or correct some of the coding entered on Baker's "Individual Lost Time Records."

**Response:  Admitted.  This was when Baker was being charged FMLA time**

**instead of worker's comp time. Immediate supervisors are responsible for coding officers' time records correctly.**

27. All Officers are responsible for entering and recording their own time sheets on an online database called "Oracle." Dunham Affidavit, ¶ 18.

**Response: Admitted.**

28. Once the officers' time is entered, the supervising Lieutenant cross-checks their attendance records and approves their time. Dunham Affidavit, ¶ 18.

**Response: Admitted, however Plaintiff is unaware if only Lieutenants checked the attendance records.**

29. The supervisory Lieutenant in their chain of command will then complete an "Individual Lost Time Record" for each month, which includes specific coding for the Officer's work status or various types of leave on each day. *See*, Defendant MARTA MSJ Exhibit 11 – Baker's Individual Lost Time Records from 2011 to 2014; Dunham Affidavit, ¶ 18.

**Response: Admitted, however Plaintiff is unaware if only Lieutenants checked the attendance records.**

30. Dunham testified that in instances requiring clarification of Police time records, police supervisory personnel has worked together with the Benefits Office to try to resolve any issues pertaining to Baker's eligibility for leave. Dunham Affidavit, ¶ 19; *see* also, Defendant MARTA MSJ Exhibit 12 – Various E-mails

concerning Baker's eligibility for leave.

**Response:  Admitted.**

31.    In or about January 2011, Baker complained that Sgt. Meadows failed to notify Baker's appropriate chain of command of her need for Emergency PTO leave. That matter was investigated and Sgt. Meadows was issued a Written Counseling for the incident. Major Easterling and Deputy Chief Dorsey (acting on my behalf) agreed with the determination. Dunham Affidavit, ¶ 20; *See*, Defendant MARTA MSJ Exhibit 13 – Sgt. Meadows Disciplinary Action Form.

**Response:   Admitted that Baker was notified that a resolution had been reached regarding this particular complaint, however Plaintiff is unaware of what disciplinary actions took place against Sgt. Meadows.**

32.    In or about November 2011, Baker complained that she believed that Major Easterling had recorded the interview wherein she was questioned about the incident with Meadows. However, Deputy Chief Dorsey investigated the matter, and his investigation revealed that there was no record of a recording. *See*, Defendant MARTA MSJ Exhibit 14 – Dorsey's Investigation Report/Findings regarding Easterling.

**Response:  Admitted that that was the finding of the investigation.**

33.    Also in November 2011, Baker filed three complaints against Lt. Williams, stating as follows: (1) on April 18, 2011, Williams attempted to assign Baker an

extra shift (referred to as being "forced"), however Baker complained she did not feel well, Williams assigned Sgt. Donaldson to replace her, however Baker refused; (2) on May 2, 2011, Williams advised Baker it was again her turn to be assigned an extra shift the next day on 5/3/11, however, instead Baker stated that she had a doctor's appointment; according to Baker, Williams inquired as to whether Baker could go to the appointment prior to the shift which started in the afternoon and allegedly screamed at her; and (3) on or about September 17, 2011, Williams advised Baker it was again her turn to be assigned an extra shift, however, instead Baker stated to her supervisor "if you try to force me, I will go out on FMLA."

**Response: (1) Denied. After Baker informed Lt. Williams that she didn't feel good and would not be able to take an additional shift, Sgt. Donaldson came by to relieve Baker of the shift she was then currently working. Baker never stated she would not finish out her current shift. She just stated that because she was ill she would not be able to stay additional time past that shift. (Baker Aff. ¶ 8. (2) Admitted, however Baker was able to make it to the assigned earlier shift on time following her doctor's appointment. (3) Denied. Plaintiff explained to Lt. Williams that she had worked 12 consecutive days and was scheduled to work 2 more days prior to receiving a day off. Baker further explained that she was physically hurting and if she had to work an additional**

**shift in addition to her current schedule, she would need to utilize FMLA to protect her physical well-being. Lt. Williams stated that she would not make her work an extra shift based upon that reasoning. Thereafter, Supervisors Arnold and Fuentes stated to Baker that Lt. Williams had told them that Baker would stay for the extra shift. Baker then made the decision to take FMLA. (Complaint ¶ 21)**

34. Deputy Chief Dorsey investigated each of Baker's complaints, but determined that all three were "Not Sustained" based upon statements obtained from Baker, Williams, and other witnesses. *See*, Defendant MARTA MSJ Exhibit 15 – Dorsey's Investigation Report/Findings regarding Williams.

**Response: Denied. Plaintiff never received any written information or findings in regard to her complaints. (Baker Aff. ¶ 11)**

35. Following Dorsey's investigation of Baker's Complaints, I met with former Officer Baker to discuss her concerns. Upon my review of the investigation records, I advised Baker that I was satisfied that the investigation had been thorough and upheld Dorsey's findings. *See*, Defendant MARTA MSJ Exhibit 16 – Letter to Baker from Chief Dunham, dated 2/29/12.

**Response: Admitted.**

36. In or about December 2012, Baker was in the process of returning to work from an extended leave period, followed by a light duty assignment (approximately

125 days total). Defendant MARTA Exhibit 25.

**Response: Admitted.**

37. As a result of her absence from regular duty for over 90 days, and pursuant to MARTA policy, Baker was required to undergo a Return-to-Work exam. *See*, Defendant MARTA MSJ Exhibit 17 – Return to Work/Reinstatement Policy.

**Response: Admitted.**

38. Sgt. Dye is the Sergeant over Background and Recruitment for MARTA Police and is in charge of administering officers' return-to-work clearance assessments. Dunham Affidavit, ¶ 25.

**Response: Admitted. However, Plaintiff is unsure of Sgt. Dye's work responsibilities.**

39. Baker raised issue with Dye concerning the fact that she was subjected to "Pre-Employment" assessments, including drug and alcohol analysis, vision, and hearing assessment, as well as routine background, criminal history, and drivers history checks. Dunham Affidavit, ¶ 26.

**Response: Admitted. However, Plaintiff did not raise issue, she requested an explanation because she knew of other individuals who had been out of work for similar reasons and weren't subjected to the same treatment, despite MARTA's Return to Work / Reinstatement Policy. (Complaint, ¶¶26-28, Baker Aff. 9-11).**

40. Sgt. Dye reported that Baker had made inquiry to her, and questioned the fact that a fellow Officer (Frazier), had not been subject to the same Pre-Employment assessments. Dunham Affidavit, ¶ 27.

**Response: Admitted.**

41. Dunham testified that because Major Easterling was the Administration Lieutenant at the time, she was Sgt. Dye's supervisor, the matter was appropriately escalated up the chain of command for Easterling's review and handling. Dunham Affidavit, ¶ 28.

**Response: Admitted, however Baker did not ever make a formal inquiry or complaint.**

42. Major Easterling reviewed the matter and determined that Officer Frazier was not required to undergo the same assessment because he had not been absent 90 days or more. *See,* Defendant MARTA MSJ Exhibit 19 – Letter to Baker from Easterling.

**Response: Denied. Upon information and belief, Officer Frazier was absent closer to 4 months from work. (Baker Aff. ¶ 9, Exhibit 6).**

43. A Training Bulletin was issued, clarifying the "Return to Work After Extended Absence Procedures and Policies." *See*, Defendant MARTA MSJ Exhibit 20 – Return to Work Training Bulletin, issued 6/21/13; Dunham Affidavit, ¶ 29

**Response: Admitted.**

44.    Baker complained to MARTA's Office of Diversity ("DEO") that she felt the memorandum was retaliatory in nature.  Dunham Affidavit, ¶ 30.

**Response:  Admitted.**

45.    The DEO investigated Baker's complaint, including obtaining a statement from me and others, and determined that the complaint was unsubstantiated. Dunham Affidavit, ¶ 30; Defendant MARTA Exhibit 5.

**Response:  Admitted, however Plaintiff was never contacted or involved in the investigation in any manner. (Complaint ¶¶ 29-30).**

46.    Dunham testified that on or about November 1, 2014, Baker's then chain of command, Major Shavers, advised her that she had received a letter of resignation from Officer Baker.  *See*, Defendant MARTA MSJ Exhibit 9 – Baker Resignation Letter, dated 11/1/14; Dunham Affidavit ¶ 5.

**Response:  Admitted.**

47.    Dunham testified that Baker at no time indicated she was retiring because she felt she was being discriminated against on the basis of her age, gender, or use of FMLA.  Dunham Affidavit, ¶ 31; Defendant MARTA MSJ Exhibit 10.

**Response:  Admitted.**

48.    Dunham testified that under her leadership, MARTA Police Services has never discriminated against any officer on the basis of their age, gender, or FMLA use; that their employment decisions are based on legitimate bases, including but

not limited to employee qualifications and performance; they simply do not discriminate on the basis of age, race, gender, or any other illegal basis whatsoever. Dunham Affidavit, ¶ 32.

**Response: Admitted that this is Dunham's testimony. Plaintiff is unaware of MARTA's history of discrimination, she is only aware of her treatment.**

49. Ms. Baker has identified herself as an African-American female born on 5/30/1956. Dunham Affidavit, ¶ 33.

**Response: Admitted.**

50. At the time of Baker's retirement, she was 58 years of age. Dunham Affidavit, ¶ 33.

**Response: Admitted.**

51. MARTA Police Services Department currently has sixty-one (61) officers employed who are over the age of 50, including twelve (12) officers that are age 58 or older; Since Baker's departure (11/14/14), Police Services have hired no less than thirteen (13) officers *over* the age of 50, including three (3) officers that are age 58 or older. Dunham Affidavit, ¶ 36, 37

**Response: Plaintiff has no knowledge of these matters and can neither admit nor deny them.**

52. MARTA Police Services currently employs eighty-eight (88) female officers; Since Baker's departure, we have hired at least twelve (12) female

officers. Dunham Affidavit, ¶ 37.

**Response:  Plaintiff has no knowledge of these matters and can neither admit nor deny them.**

53.    Dunham testified that throughout her career as Chief of Police they have had numerous officers utilize FMLA leave at various times; yet they have never taken any adverse action against any officer based upon their use of FMLA leave. Dunham Affidavit, ¶ 38

**Response:  Plaintiff has no knowledge of these matters and can neither admit nor deny them.**

54.    Dunham testified MARTA Police likewise have never taken any adverse action against Officer Baker based upon her use of FMLA leave.   Dunham Affidavit, ¶ 39.

**Response:  It is admitted that Dunham stated that in her affidavit.  However, Baker has been treated unfairly and harassed because of her use of FMLA. Plaintiff continually notified supervisors of these issues, including Dunham.**

This 9th day of June, 2016.

                                        **THE MOLDEN LAW FIRM, LLC**

                                        /s/ Regina S. Molden
                                        Regina Sledge Molden
                                        Georgia Bar No. 515454
                                        Janné Y. McKamey
                                        Georgia Bar No. 494137
                                        Peachtree Center – Harris Tower

233 Peachtree Street NE
Suite 1245
Atlanta, Georgia 30303
Telephone: (404) 324-4500
Facsimile: (404) 324-4501
Email: rmolden@moldenlaw.com
Email: jmckamey@moldenlaw.com
Attorneys for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this document complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the Northern District of Georgia, and has been typed in Times New Roman 14 point.

s/Janné Y. McKamey
Janné Y. McKamey