IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA

| O'LILLIAN BAKER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No.: |
| v. | ) | 1:15-CV-03232-MHC-CMS |
| | ) | |
| METROPOLITAN ATLANTA | ) | |
| RAPID TRANSIT | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff O'Lillian Baker ("Plaintiff") and files this Plaintiff's Response in Opposition to Defendant Metropolitan Atlanta Rapid Transit Authority's ("Defendant" or "MARTA") Motion for Summary Judgment ("Defendant's Motion"), showing the Court as follows[1]:

## I.   INTRODUCTION

Plaintiff is a 59 year-old, African-American female who began working for MARTA on November 15, 2004 as a Transit Officer. Plaintiff was promoted to Sr. Transit Officer in November 2006. For the first three and a half years

---

[1] Despite the Parties being afforded the normal amount of time granted by the Court to complete discovery, the Defendant has failed to conduct any written or deposition discovery. Thus, Defendant's Motion for Summary Judgment lacks the sufficient evidence necessary to overcome the substantial burdens of a Rule 56 Motion.

-- 1 --

Plaintiff had an impeccable record with no history of disciplinary actions. Prior to working for Defendant, Plaintiff worked as a police officer in another jurisdiction for ten years and was never subjected to any disciplinary action during her tenure at that employment. (Complaint ¶ 18, 20-25, Baker Aff. ¶ 5, 7-9, 12, 14, 15)

At MARTA Plaintiff experienced harassment due to her status as an over 50-year old female and her decision to exercise her FMLA rights.

In September 2007, Baker was written up as absent without leave ("AWOL") by her then supervisor, Sgt. Meadows, after Baker had been given permission to be off. Baker filed a grievance to have the AWOL overturned and removed from her record. Following an investigation, in or around February 2008, the AWOL was overturned and removed from her record. (Baker Aff. ¶ 7, Dunham Aff. ¶8,Exhibit 5)

On September 17, 2011, Baker advised Lt. Williams, her then supervisor, that she would need to exercise FMLA (Baker had already been approved for intermittent FMLA pursuant to her medical condition) after working 14 consecutive 10 hour shifts. Upon returning to work on September 18, 2011, she was forced to write a letter explaining her decision to utilize FMLA. After submitting her explanation, she was called into a meeting with Maj. Easterling, Ofcr. Hosely and Ofcr. Fuentes, three of her superiors, and further questioned

about her decision to utilize FMLA. (Complaint ¶ 21, Baker Aff. ¶ 8)

When Baker brought the intentional disparate treatment to the attention of her supervisors, it only caused further harassment in the form of policies being more strictly enforced against her than against her younger male coworkers.

In July 2012, after returning to work from a minor surgery, Baker was required to submit to a pre-employment fitness for duty exam.  At that time, Baker had been employed by MARTA for nearly 8 years.  In all, Baker was required to undergo pre-employment requirements of:  a hearing and vision test, a urinalysis and drug test, a criminal background check and a credit and driver's license investigation.  (Complaint ¶ 26-27, Baker Aff. ¶ 9)

When Baker found out that other officers were not subject to these actions upon returning to work after an extended medical absence, she contacted Sgt. Dye to inquire as to the differences in procedure.  Baker's inquiry was met with hostility, having received a letter from Maj. Easterling indicating that her "complaint" was not sustained as the "investigation" failed to discover sufficient evidence to clearly prove or disprove her allegation.  It should be noted that Baker never filed a formal complaint at this time and was unaware of any official investigation since she was never contacted or interviewed about the matter.  It appears that the alleged investigation consisted solely of third party accounts and statements.  As such, Baker was never provided an explanation as to why her

younger male coworkers were treated more favorably. (Complaint ¶ 21, 28, 29; Baker Aff. ¶ 10-11)

Additionally, correspondence directly from her supervisors shows that while her time off was calculated by using calendar days, her co-worker's time off was calculated by only using his normally scheduled workdays.

In June 2014, on a separate occasion, Baker submitted paperwork to take FMLA to assist her ailing father, but was told by Benefits she didn't have any to utilize. Upon further investigation, it was determined that Baker's FMLA hours had been improperly allocated to comp time. When Baker sought assistance from Chief Dunham, she was advised that nothing could be done to correct the misallocation. This intentional misallocation also placed Baker in the position of possible termination. Baker then approached Benefits who corrected the hours and determined that she was indeed eligible for FMLA. (Complaint ¶ 23-25, Baker Aff. ¶ 13-14)

Throughout her tenure at MARTA, Plaintiff was regularly badgered and berated for using FMLA time. She was referred to as the "Queen of FMLA" and the "Motherfucker on FMLA". This treatment continued up until her last use of FMLA which was only a few months prior to her leaving MARTA. (Complaint ¶ 31, Baker Aff. 5-6, 16-17)

Plaintiff retired from MARTA effective December 1, 2014 due to the

discriminatory treatment she had been subjected to during her tenure at MARTA, as well as her belief that if she would need to utilize FMLA in the future she would continue to be subjected to the same negative treatment. (Baker Aff. ¶ 18)

## II.   STATEMENT OF FACTS

Plaintiff incorporates by reference her Response to Defendant's Statement of Material Facts as to Which There is No Genuine Issue to be Tried, and Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment filed pursuant to Local Rule 56. All exhibits or other materials referred to in this memorandum are attached or filed pursuant to Local Rule 56.

## III.   STANDARD OF REVIEW

In the consideration of a motion for summary judgment, the facts put forth by a non-movant are entitled to considerable deference. All reasonable factual inferences must be drawn in the non-moving party's favor. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); McCormick v. City of Fort Lauderdale, 333 F. 3d 1234, 1243 (11th Cir. 2003). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Celotex v. Catrett, 477 U.S. 317, 322 (1986). The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the

absence of a genuine issue of material fact." Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-movant is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. The facts must be viewed in the light most favorable to the non-moving party. Id. If the record does not blatantly contradict the non-movant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### IV. ARGUMENT AND CITATION TO AUTHORITY

Applying the statutory and judicial standards to the facts of this case can lead to only one conclusion: Plaintiff's case deserves to be heard on the merits by a jury of her peers, and thus Defendant's motion for summary judgment must be denied. MARTA's contentions are based on a self-serving declaration from an employee of MARTA, which is clearly worded as to avoid providing a full picture of the relevant facts, specifically those supporting Plaintiff's position.

A.  **Plaintiff's Title VII and §1983 Claims.**

Plaintiff does not concede that the discrimination and retaliation she was subjected to during her tenure at MARTA are limited to a specific timeframe. Indeed, Plaintiff's EEOC charge put it on notice of the types of discriminatory claims made against it, and the scope of the investigation could "reasonably be expected to grow out of the charge of discrimination. Alexander v. Fulton County, GA, 207 F.3d 1303, 132 (11th Cir. 2000). The 11th Circuit has taken the approach that a judicial complaint is not limited to the scope of an EEOC charge, but to the scope of the EEOC investigation. Alexander 207 F.3d at 1332. Presumably, if the EEOC had completed its investigation it would have looked at all purported instances of discrimination throughout Plaintiff's employment with Defendant. Therefore, Baker's claims should not be limited only to the specific events set out in her complaint or in the EEOC Charges.

B.  **Plaintiff's Title VII and § 1983 Claim of Retaliation Must Survive Defendant's Motion for Summary Judgment.**

Title VII and §1983 prohibits discrimination against an employee because he or she opposed a practice that is unlawful under the statute. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation in the absence of direct evidence, a plaintiff must prove that (1) she engaged in statutorily protected activity; (2) the employer took a materially adverse action against her; and (3)

there was some causal relation between the protected activity and the adverse action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 59-71 (2006). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of [retaliation]." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

In order to have engaged in protected activity, a plaintiff must establish that she had a good faith, reasonable belief that she was opposing an unlawful employment practice. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311-12 (11th Cir. 2002) (quotation omitted). It is not enough for a plaintiff to allege that her belief in this regard was honest and bona fide; the allegations and record evidence must also indicate that the belief, though perhaps mistaken, was objectively reasonable in light of the existing substantive law. Little v. United Techs., 103 F.3d 956, 960 (11th Cir. 1997). "[A] plaintiff is not required to prove that the underlying discriminatory conduct that she opposed was actually unlawful in order to prove that her belief was objectively reasonable." Id.

Here, Baker clearly opposed the treatment she was subjected to when exercising her legal right to utilize FMLA and when she reported harassing comments made about her in regard to her age by younger employees. When she reported such actions, her superiors either ignored her concerns, or failed to

address her concerns with the purported offenders, or, according to the Plaintiff, participated in the harassing behavior. Additionally, Baker's FMLA was either intentionally or negligently included in the attendance portion of Baker's personnel records used for an employee's annual review. When Baker complained to a supervisor about it, nothing was done. When a younger employee complained to a supervisor that FMLA was included in their personnel records used for annual review, Defendant removed the FLMA information from their file. This annual review is directly related to raises in compensation and promotions and by leaving such FMLA information in the records, retaliation and discrimination have been demonstrated. Finally, when Plaintiff was off of work for a minor surgery, her time off was calculated differently from her male counterparts which resulted in her having to go through all of the initial pre-employment steps, including recertification as an officer, to come back to work. Given the facts, Plaintiff can clearly establish a *prima facie* case of retaliation under the required elements set forth *supra*.

### C. Defendant Interfered with Baker's Rights to Utilize FMLA

The FMLA guarantees eligible employees the right to twelve (12) weeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of the employee's position. 29 USC §2612(a)(1). "To preserve the availability of these rights, and to enforce

them, the FMLA creates two types of claims:  interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the act." <u>Strickland v. Water Works</u>, 239 F.3d 1199, 1206 (11th Cir. 2001).  Baker asserts both an interference claim and a retaliation claim.

The FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 USC (a)(1).  Plaintiff argues that MARTA interfered with her right to exercise FMLA leave by: (1) failing to correctly calculate her earned FMLA hours, thus not only placing her in jeopardy of losing benefits but also placing her in danger of termination which would have cost her the opportunity to retire with full benefits; (2) making her give written statements and verbal explanations of her decision to exercise her FMLA rights when she was already approved for intermittent FMLA; and (3) by allowing Baker to be constantly berated and called names for exercising her rights to utilize FMLA.  She was regularly referred to as the "Queen of FMLA" and as the "Motherfucker on FMLA".  Interference with the exercise of rights under the FMLA also includes "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). Harassment and negative comments about an employee's use of FMLA leave constitutes interference under the

FMLA. See, Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001); Zahler v. Empire Merchants, LLC, No. 11-CV-3163-JG-CLP, 2012 WL 273698, at *8 (E.D.N.Y. Jan. 31, 2012).  These are most certainly questions for a jury and cannot be simply explained away by a self-serving affidavit as the one presented by Defendant.

Here, Plaintiff's sworn Complaint and Affidavit show Plaintiff's supervisors questioning her need to be off even though she had been approved for intermittent FMLA.  Here, Defendant discouraged and harassed Plaintiff for exercising her FMLA rights and attempted to deny Baker the right to utilize the FMLA benefit to which she was entitled, the continued use of her intermittent FMLA leave. Accordingly, Defendant's motion must be denied. See, Spakes v. Broward County Sheriff's Office, 631 F.3d 1307, 1309-10 (11th Cir. 2011) (upholding verdict for plaintiff on interference claim where she was terminated before being able to use FMLA leave); Wahl v. Seacoast Banking Corp. of Fla., No. 09-81382-CIV, 2011 WL 861129, at *7-8 (S.D. Fla. March 9, 2011) (summary judgment to plaintiff on interference claim where termination denied her continuing use of leave); Maldanado v. The Pictsweet Co., 670 F. Supp. 2d 691, 692-93, 695 (W.D. Tenn. 2009) (summary judgment to plaintiff on interference claim where terminated after using intermittent FMLA leave).

Finally, Baker believes that Defendant's interference with her FMLA rights

was intentional, thus making the statute of limitations in regard to such claims three years.  It should be recalled that FMLA time is accrued, and is therefore a continuous and not stationary event.

> **D.     Defendant is not Entitled to Summary Judgment on Baker's FMLA Retaliation Claim**

An eligible employee may take the approved FMLA leave on an intermittent basis in separate periods of time. 29 C.F.R. § 825.202(a). It is undisputed that Baker was an eligible employee who was approved for intermittent FMLA leave.

To protect an eligible employee's rights to FMLA leave, the FMLA creates two types of claims: interference and retaliation. 29 U.S.C. §2615(a)(1) & (2); Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206-07 (11th Cir. 2006). Baker establishes both types of claims and summary judgment to Defendant must be denied.

Defendant contends that Baker's FMLA claims fail because they are time-barred.  Plaintiff's claims were continuous and ongoing up until the time she retired in 2014.  Immediately thereafter, Plaintiff filed her EEOC Charge and, once the Right to Sue Letter was received, immediately filed suit.  Thus, this argument is without merit.

To establish that Defendant retaliated against Baker in violation of the

FMLA, Plaintiff must show that Defendant intentionally discriminated against her for having exercised her rights under the FMLA. Strickland, 239 F.3d 1207; Ashe v. Aronov Homes, Inc., 354 F. Supp. 2d 1251, 1263-64 (M.D. Ala. 2004). Baker's burden is higher on her retaliation claim than on her interference claim because to establish retaliation under the FMLA she must show that Defendant's actions were motivate by discriminatory or retaliatory animus. Strickland, 239 F.3d 1207; Ashe, 354 F. Supp. 2d at 1263-64. Despite this higher burden, Plaintiff is able to establish an FMLA retaliation claim.

To state a claim for retaliation under the FMLA, Baker must establish that (1) "[s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment action; and (3) the decision was causally connected to the protected activity." Ashe, 354 F. Supp. 2d at 1263-64 (citing Strickland, 239 F.3d at 1207). It is undisputed that Baker engaged in protected activity when she sought FMLA leave to care for her seriously ill father or for herself, was approved for FMLA leave, and thereafter used her FMLA leave on an intermittent basis while continually being harassed for using it. Baker also suffered an adverse employment action when Defendant listed instances of her FMLA leave on her performance evaluation forms. Baker's decision to retire was causally connected to harassment of her use of FMLA leave. Additonally, when Baker's FMLA hours

were misallocated, either intentionally or negligently, it negatively affected her personnel record in that she was just a few hours of time off away from being terminated.To establish a causal connection, Ms. Corbin need only show that her FMLA leave and negative employment treatment are not "wholly unrelated." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999) (citation omitted). She may do so by showing that her use of leave and termination were temporally proximate. Clarke County Sch. Dist. V. Breeden, 532 U.S. 268 (2001). Here, Plaintiff constantly harassed for using FMLA leave to which she was entitled to, and was basically forced into retirement to avoid the continuation of such negative behavior towards her.

    Plaintiff has put forth sufficient evidence from which a jury could conclude that she was harassed in retaliation for exercising her FMLA rights. It is undisputed that Baker utilized her FMLA rights on numerous occasions. It is equally undisputed that Baker may have suffered adverse employment actions in that not only was her FMLA time intentionally credited towards comp time, but such misallocation could have resulted in her being terminated. Additionally, when she discovered that her FMLA absences were included in her performance evaluation and requested that they be removed to comply with MARTA policy, she was met with hostility while a younger co-worker was not.  Moreover, close

temporal proximity between activity protected under the FMLA and an adverse employment action can establish causal connectivity. <u>Corriveau v. Starbucks Coffee Co.</u>, 2010 U.S. Dist. LEXIS 144712, *62 (S.D. Fla. Mar. 12, 2010) <u>citing</u> <u>Bass</u>, 256 F.3d at 1119.

As such, Baker has presented a <u>prima facie</u> case of FMLA retaliation.

MARTA's contentions are based on a self-serving declaration from the main employee of MARTA who should have been protecting Baker's rights. Such affidavit is clearly worded as to avoid providing a full picture of the relevant facts, specifically those supporting Plaintiff's position.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted this <u>9th</u> day of June, 2016.

**THE MOLDEN LAW FIRM, LLC**

<u>s/Regina S. Molden</u>
Regina Sledge Molden
Georgia Bar No. 515454
Janné Y. McKamey
Georgia Bar No. 494137
233 Peachtree Street NE
Suite 1245
Peachtree Center – Harris Tower

                                                  Atlanta, Georgia 30303
                                                  Telephone:  404-324-4500
                                                  Email: jmckamey@moldenlaw.com
                                                  Email: rmolden@moldenlaw.com

                                                Attorneys for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this document complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the Northern District of Georgia, and has been typed in Times New Roman 14 point.

s/Janné Y. McKamey
Janné Y. McKamey

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA

| | | |
|---|---|---|
| O'LILLIAN BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No.: |
| v. | ) | 1:15-CV-03232-MHC-CMS |
| | ) | |
| METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I certify that on June 9, 2016, I filed the Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will automatically send notice of such filing to the following attorneys of record for the Defendant:

MOZLEY FINLAYSON & LOGGINS, LLP
One Premier Plaza
5605 Glenridge Drive, Suite 900
Atlanta, GA 30342
Telephone: (404) 256-0700
Facsimile: (404) 250-9355
jlowery@mfllaw.com
jwillis@mfllaw.com

This 9th day of June, 2016.

/s/ Janné Y. McKamey
Janné Y. McKamey, Esq.

-18-

Georgia Bar No. 494137