IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

O'LILLIAN BAKER,

     Plaintiff,

v.

METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY,

     Defendant.

CIVIL ACTION FILE NO.

1:15-CV-3232-MHC-CMS

## <u>FINAL REPORT AND RECOMMENDATION</u>

This matter is before the Court on Defendant Metropolitan Atlanta Rapid Transit Authority's ("MARTA") Motion for Summary Judgment. (Doc. 22). In the Complaint, Plaintiff O'Lillian Baker, an African-American woman born in 1956, asserts five counts based on acts that occurred during her employment as a transit police officer with MARTA between 2007 and 2014: sex discrimination in violation of Title VII and 42 U.S.C. Section 1983 (Counts 1 & 2); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") (Count 3); retaliation in violation of Title VII and Section 1983 (Count 4); interference with her rights under the Family Medical Leave Act ("FMLA") (Count 5); and retaliation in violation of the FMLA (Count 6). (Doc. 1,

Compliant). For the reasons stated below, I **RECOMMEND** that MARTA's Motion for Summary Judgment (Doc. 22) be **GRANTED.**

## I.  FACTUAL BACKGROUND

When evaluating the merits of a motion for summary judgment, a court must view the evidence and factual inferences in the light most favorable to the non-moving party. Ave. CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013). Viewed in this light, the following facts emerge:

Baker is an African-American woman born in 1956. (Doc. 26-1, Plaintiff's Statement of Material Facts ("PSMF") 1; Doc. 22-2, Defendant's Statement of Material Facts ("DSMF") 49; Doc. 29, Affidavit of O'Lillian Baker ("Baker Aff.") ¶ 1). Between November 15, 2004 and December 1, 2014, Baker was employed by MARTA as a transit police officer. (PSMF 2; DSMF 2). In November 2006, Baker was promoted to senior transit police officer. (PSMF 3). Baker remained a senior transit police officer until she retired, effective December 1, 2014. (PSMF 4; DSMF 3; Doc. 24-1 at 57-59, Baker's Termination Records).

MARTA transit police officers are subject to annual evaluations of various factors, including attendance, that are used to determine an officer's eligibility for a merit-based increase in pay. (DSMF 17, 18, 19). Baker received a raise during each year of her employment in connection with her annual review. (DSMF 23).

At the time of her retirement, Baker received the maximum salary available for her pay grade.  (Id.).

Baker filed an affidavit in opposition to MARTA's motion for summary judgment[1] stating that throughout her tenure at MARTA she was subjected to harassment, retaliation, and unfair treatment because of her use of FMLA leave and her age.  (Baker Aff. ¶ 5).  Baker makes other non-specific averments of unfair treatment, including that she was referred to as "the Queen of FMLA" and the "motherfucker on FMLA" at unspecified times (id. ¶ 16); that at some unspecified time she reported to Chief Joseph Dorsey that comments had been made about her age and gray hair, including that an unidentified person said that Baker was "old and don't know what she's talking about" (id. ¶ 17); and that her request to remove her FMLA leave from her performance evaluation was denied, while a similar request made by a younger officer was granted (id. ¶ 15).

In terms of specific acts of allegedly illegal discrimination and retaliation, Baker's affidavit addresses five incidents.

First, in September 2007, Baker's supervisor, Sergeant Meadows, wrote Baker up as being absent without leave ("AWOL") when in fact, she had

---

[1]     No deposition transcripts were referenced or filed in support of, or in opposition to, MARTA's motion for summary judgment.

permission to be off. Baker filed a grievance, which resulted in the write-up being removed from her employment record. (Baker Aff. ¶ 7).

Second, in September 2011, Baker utilized FMLA leave. After she returned to work, Baker was required to write a letter explaining why she had taken FMLA leave and was required to participate in a meeting about her use of FMLA leave. (Baker Aff. ¶ 8). Two months later, in November 2011, Baker complained that Major Nelvette Easterling had improperly recorded the meeting. (PSMF 10; DSMF 32; Affidavit of Nelvette Easterling ("Easterling Aff.") ¶ 11). MARTA investigated the complaint and found no record of any recording of the meeting. (DSMF 32; Doc. 24-1 at 75-79).

Third, in 2012, Baker returned from work after an extended (more than 90 day) period of FMLA leave. (Baker Aff. ¶ 9). Baker was required to undergo a return-to-work exam that was more involved than the exams others were subjected to. (Id.). Baker asked why she was subjected to certain "pre-employment" assessments, including drug and alcohol analysis, vision and hearing assessments, and background, criminal history, and driver's history checks while a younger male officer, Officer P. Frazier, had not been subjected to the "pre-employment" assessments; Baker's inquiry "was met with hostility." (Id. ¶¶ 9-10). Her concerns were brought to Major Easterling, who reviewed the matter and determined that

because Officer Frazier was not absent from duty for more than 90 days, he was properly subject to a different assessment protocol than Baker. (Doc. 24-1 at 173-78, Affidavit of Tiawaunde Dye ("Dye Aff.") ¶ 13; Doc. 24-1 at 151-60, Easterling Aff. ¶ 17). Based on his findings, Major Easterling issued a memorandum to Baker dated December 14, 2012 formally responding to Baker's concerns about the assessments, and Baker considered the memo to be retaliatory. (Easterling Aff. ¶ 18; Doc. 24-1 at 24-1 at 87, 116). Baker then filed a complaint with MARTA's Office of Diversity complaining that Major Easterling had retaliated against her by treating her inquiry about her return-to-work assessment as a formal complaint. (Doc. 24-1 at 30-32). The Office of Diversity investigated Baker's complaint and determined that it was unsubstantiated. (DSMF 44; Doc. 24-1 at 30-32).

Fourth, Baker states in her affidavit that on May 20, 2014, she was "erroneously docked sick time when [she] took extended time off for a funeral." (Baker Aff. ¶ 12). Although Baker gave notice to her supervisor about the funeral, she was given a written warning. (Id.).

Fifth, Baker states that in June 2014, she submitted a request for FMLA leave to care for her father, and the request was originally denied because her prior leave request had been improperly classified. (PSMF 15, 18; Baker Aff. ¶ 13, 14). It is undisputed that when Baker brought the issue to the attention of MARTA's

Benefits Office, the errors were corrected. (Baker Aff. ¶¶ 13, 14). Baker claims that the misclassification of her leave requests as FMLA leave (rather than "comp time") placed her in jeopardy of termination for excessive time off and could have resulted in the loss of retirement benefits. (Id.). Baker states that these miscalculations "negatively impacted" her "benefits and retirement" by placing her "in danger of being terminated for taking too much time off." (Id. ¶ 13).

Baker states that in November 2014, she submitted notice that she would be retiring. (Baker Aff. ¶ 18). Baker states that the reason she decided to retire was "based on the discriminatory treatment" she had been subjected to "during her tenure at MARTA" and her belief that any future requests for FMLA leave would result in "the same negative treatment." (Id.). In the letter Baker wrote to her supervisor to notify him of her intent to retire, however, Baker did not mention these reasons. (Doc. 28-1 at 3; Doc. 24-1 at 55). Similarly, when Baker completed her exit interview form, she did not indicate that she was retiring because of any poor treatment she may have received based on her sex, age, or use of FMLA leave. (Doc. 28-1 at 6; Doc. 24-1 at 59). On the contrary, Baker rated her working relations with her immediate supervisor and her supervisor's supervisor as "Excellent," and indicated that she would recommend MARTA employment in her

area, and in general, to a friend.  (Id.).  Regarding Baker's stated reason for resignation, Baker checked the box next to "Retirement."  (Id.).

Baker's termination record was coded as a "Normal Retirement" by MARTA.  (Doc. 28-1 at 4; Doc. 24-1 at 57).  It is undisputed that at the time of her retirement in December 2014, Baker never indicated to anyone at MARTA that she was retiring because of any discrimination against her on the basis of her age, sex, or use of FMLA leave.  (Baker Aff. ¶ 18; see also DSMF 47; Dunham Aff. ¶ 31; Easterling Aff ¶¶ 6, 9; Doc. 33, Affidavit of Deputy Chief of Police Joseph Dorsey ¶ 7).  Two months after she retired, on January 23, 2015, Baker filed a charge of discrimination with the EEOC.  (Doc. 24-1 at 114).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Ezell v. Wynn, 802 F.3d 1217, 1222 (11th Cir. 2015).  The moving party bears the initial burden of showing the court "the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact" and "an absence of evidence to support the non-moving party's case."  Celotex Corp. v. Catrett, 477

U.S. 317, 323-25, 106 S.Ct. 2548, 2553-54 (1986); U.S. v. Four Parcel of Real Prop., 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). If the moving party fails to discharge this initial burden, the motion must be denied. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).

If the burden is met, however, the non-moving party must then "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56). Mere conclusions and factual allegations unsupported by evidence are insufficient to survive a motion for summary judgment. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Scant evidence supporting the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be substantial evidence produced for a jury reasonably to find in the nonmoving party's favor. Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009).

## III.   DISCUSSION

As noted above, the incidents about which Baker complains date back to 2007. Thus, with respect to each claim, I have first set out the relevant statute of

limitations to determine which of the claims, if any, are time-barred and then analyzed the timely claims.

## A. Title VII and ADEA Claims (Counts 1, 3, and 4)

### 1. EEOC Exhaustion and the 180-Day Rule

Under both Title VII and the ADEA, a plaintiff must exhaust her administrative remedies, beginning with the filing of a charge of discrimination or retaliation with the appropriate administrative agency prior to filing a civil action. 42 U.S.C. § 2000e-5; H&R Block E. Enters. v. Morris, 606 F.3d 1285, 1295 (11th Cir. 2010) (Title VII requirement); 29 U.S.C. § 626(d)(1); Bost v. Fed. Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004) (ADEA requirement). The purpose of this rule is to ensure that the EEOC has the opportunity to investigate and attempt conciliation of all claims before a lawsuit is filed. See Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004). The rule is also intended to ensure that an employer is given notice of potential claims and the scope of the EEOC's investigation so that the employer has the opportunity to investigate and resolve such disputes before it is sued. Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1303 (N.D. Ga. 2009).

Only those alleged unlawful employment practices that occur within 180 days of the filing of the charge are actionable. 42 U.S.C. § 2000e-5(e)(1); 29

U.S.C. § 626(d)(1)(A); see also Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003) ("Because Georgia is a non-deferral state, [the plaintiff is] required to file a Charge of Discrimination within 180 days of the alleged unlawful employment action."). Any act of alleged discrimination that occurred prior to 180 days before the filing of an EEOC charge is untimely and not actionable. Alexander v. Fulton Cty, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000). "If a party fails to comply with the charge-filing requirement, he cannot assert a claim in court." Sheffield v. United Parcel Serv, Inc., 403 F. App'x 452, 454 (11th Cir. 2010) (unpublished) (citing Natl R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070 (2002)).

Thus, a plaintiff must file a timely charge of discrimination with the EEOC, and any subsequent complaint "is limited by the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." Alexander, 207 F.3d at 1332 (internal citations and quotations omitted). Accordingly, "allegations of new acts of discrimination [in a complaint] are inappropriate." Gregory, 355 F.3d at 1279-80.

In this case, Baker filed a single charge of discrimination that was received by the EEOC on January 23, 2015. (Doc. 24-1 at 114, Charge of Discrimination). In her charge, Baker complains of four incidents:

(i)   In September 2007, Baker's supervisor, Sergeant Meadows, unfairly wrote her up as being AWOL.

(ii)  In January 2009, Sergeant Meadows unfairly wrote Baker up as being AWOL even though she told him that her father had been involved in a serious accident.

(iii) In June 2014, Baker submitted a request for FMLA leave to care for her father, and the request was originally denied because her FMLA time was miscalculated. When she brought the issue to the attention of the Benefits Office, the error was corrected.

(iv)  In September 2014, Baker's request for FMLA leave was denied due to errors coding her previous use of leave time.   After Baker sat down with the benefits representative, her requested FMLA leave was approved.

(Doc. 24-1 at 114, Charge of Discrimination).

Applying the 180-day rule to Baker's case, only those allegedly discriminatory acts that occurred on or after **July 28, 2014** (180 days before Plaintiff filed her January 23, 2015 EEOC charge) would be timely for purposes of Title VII and the ADEA.  Thus, the only conduct that Baker raised in her EEOC charge that falls within this time period is her September 2014 request for FMLA leave that was initially denied but then later granted.  Accordingly, this is the only conduct that can serve as a basis for Baker's claims under Title VII and the

ADEA.[2]  See Alexander, 207 F.3d at 1332 ("No action alleging a violation of Title

VII may be brought unless the alleged discrimination has been made the subject of

a timely-filed EEOC charge.")

Baker tries to avoid this result by arguing her "claims should not be limited

only to the specific events set out in her complaint or in the EEOC Charges."

(Doc. 28 at 7).  Baker argues that her EEOC charge put the EEOC on notice of the

discrimination she faced, and that the scope of the EEOC investigation could

reasonably be expected to cover all of the discrimination of which she now

complains, including separate incidents involving individuals not named in the

charge of discrimination.

A judicial complaint may properly raise claims beyond those stated in an

EEOC charge if those claims can reasonably be expected to grow out of the charge

of discrimination. See Gregory, 355 F.3d at 1280.  That legal principle, however,

does not apply in this case.  The conduct about which Baker complained in her

EEOC charge consisted of four discrete incidents in which Baker asserted either

that she was improperly written up by Sergeant Meadows for being AWOL or that

---

[2]      Baker has not argued, nor shown, any circumstances that warrant an
equitable modification of the requirement that a charge of discrimination be filed
within 180 days of the alleged unlawful employment practice.  See Villarreal v.
R.J. Reynolds Tobacco Co., 839 F.3d 958, 971-72 (11th Cir. 2016).

her leave was misclassified. Many of the claims Baker seeks to advance in her

Complaint (or in response to MARTA's motion for summary judgment) are based

on the comments made by other individuals, the return-to-work clearance

assessment she was required to go through after returning from leave in 2012, and

the memorandum she received from Major Easterling allegedly in retaliation for

her expressing concerns about her treatment upon returning from FMLA leave.

Based on Baker's charge of discrimination, the EEOC could not reasonably have

been expected to investigate the untimely and unrelated claims Baker now seeks to

bring.[3] Id. at 1279-80 (while a complaint may "amplify, clarify, or more clearly

focus" the allegations in the charge of discrimination, "allegations of new acts of

discrimination are inappropriate"); Minix v. Jeld-Wen, Inc., 237 F. App'x 578, 588

(11th Cir. 2007) (unpublished) (Title VII claim based on an employment action

that was not raised in an EEOC charge was not properly before the court);

Anderson v. Embarq/Sprint, 379 F. App'x 924, 927 (11th Cir. 2010) (unpublished)

---

[3]     The EEOC received Baker's request for a "Right-to-Sue" letter the same day it received her charge of discrimination. (Doc. 24-1 at 114; Doc. 31 at 38, 39). Baker acknowledges that there was no broad investigation, noting that the EEOC investigation was never even completed. (Doc. 28 at 7) ("[I]f the EEOC had completed its investigation it would have looked at all purported instances of discrimination throughout Plaintiff's employment with Defendant.")

(affirming dismissal of failure-to-promote claim that was not included in EEOC charge and that pre-dated the complaints listed in the EEOC charge).

2. The Merits of Baker's Exhausted/Timely Title VII and ADEA Discrimination Claims (Counts 1 and 3)

Under Title VII, it is unlawful for an employer to discharge any individual or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her sex. 42 U.S.C. § 2000e-2(a)(1). The ADEA offers similar protection from discrimination for individuals over the age of forty, making it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

"Employment discriminations claims all require proof of discriminatory intent." Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1191 (11th Cir. 2016). Where a plaintiff relies on circumstantial evidence to show that her employer discriminated against her because of her membership in a protected class, courts may apply the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See EEOC v. Joe's Stone Crabs, 296 F.3d 1265, 1272 (11th Cir. 2002) (applying the McDonnell Douglas

framework to discrimination claims under Title VII); Liebman v. Metropolitan Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015) (applying the McDonnell Douglas framework to discrimination claims under the ADEA).  Under this framework, a plaintiff must first make a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she experienced an adverse employment action; (3) her employer treated a similarly situated person outside of her protected class more favorably; and (4) she was qualified to do the job.  Rice-Lamar v. City of Ft. Lauderadle, 232 F.3d 836, 842-43 (11th Cir. 2000); Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  Once the prima facie case is established, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions and raise a genuine issue of fact as to whether it acted improperly.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct 1089, 1094 (1981); see Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1336 (11th Cir. 2015).  Where the prima facie case is rebutted, the plaintiff then must show that the defendant's stated reasons are pretexts for discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000); Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308-09 (11th Cir. 2012).

Baker's sex discrimination claim in Count 1 is based on her allegations that MARTA treated her less favorably than similarly situated male employees by forcing her to participate in an interview to justify her request for FMLA leave, and by subjecting her to "more intrusive tests and background searches than male employees" following a return from FMLA leave. (Compl. ¶¶ 35, 36). With regard to Baker's age discrimination claim in Count 3, Baker alleges that she was subject to more intrusive testing when she returned from medical leave as compared to "younger new hires," and that her direct supervisors were allowed "to continually ridicule [her] in the presence of other employees during meetings and in other work situations, about her decision to take FMLA leave." (Id. ¶¶ 49, 50). As discussed above, none of these claims were the subject of a timely-filed EEOC charge and therefore, are not actionable.

The only timely and exhausted claim that Baker could even arguably assert under Title VII or the ADEA is based on Baker's September 2014 request for FMLA leave that was initially denied but then later granted. I note that Baker did not make any allegation about the September 2014 incident in her Complaint, nor did she mention it in her affidavit in opposition to Defendant's motion for summary judgment. The only place this incident appears is in the EEOC charge. But, even assuming this claim had been properly asserted and had been supported

by competent summary judgment evidence, it is evident that nothing about this incident demonstrates discrimination based on Baker's sex or age.

Moreover, Baker cannot show that the September 2014 incident led to a materially adverse employment action within the context of a Title VII or ADEA discrimination claim. Not all conduct by an employer negatively affecting an employee constitutes an adverse employment action. Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). To be actionable, the claimed impact of the discrimination "cannot be speculative and must have a tangible adverse effect on the plaintiff's employment" when "viewed by a reasonable person in the circumstances" regardless of the employee's subjective view. Id. at 1239. Here, it is undisputed that MARTA's Benefits Office responded to Baker's concerns, corrected its error, and ultimately approved Baker's September 2014 request for FMLA leave. (Doc. 24-1 at 162-71, Affidavit of Santa Rivera ("Rivera Aff.") ¶ 8).

For these reasons, I **RECOMMEND** that MARTA's motion for summary judgment be **GRANTED** on Baker's discrimination claims under Title VII and the ADEA (Counts 1 and 3).

3.      The Merits of Baker's Exhausted/Timely Title VII Retaliation Claim
        (Count 4)

In Count 4, Baker alleges retaliation in violation of Title VII,[4] which

prohibits retaliation by an employer against an individual because she has (a)

opposed any practice made unlawful by Title VII or (b) made a charge of

discrimination or participated in a discrimination investigation or proceeding under

Title VII.  See 42 U.S.C. § 2000e–3(a); EEOC v. Total Sys. Servs., Inc., 221 F.3d

1171, 1174 (11th Cir. 2000).  To establish a prima facie case of retaliation, a

plaintiff must show that: (1) she engaged in statutorily protected conduct; (2)

suffered an adverse employment action; and (3) the adverse action was causally

related to the protected expression.  Butler v. Ala. Dep't of Transp., 536 F.3d 1209,

1212-13 (11th Cir. 2008).

Baker's Title VII retaliation claim in Count 4 is based on her allegation that

after she complained to her superiors that she felt discriminated against based on

her sex (on some unspecified date), she was forced to participate in interviews

following her return from FMLA leave (presumably in 2011 and/or 2012) that

"resulted in Plaintiff's early retirement."  (Compl. ¶¶ 58, 59).  As noted above, the

---

[4]     Baker also alleges retaliation in violation of Section 1983 in the same count.
I have addressed the Section 1983 retaliation claim in the next section of this
Report and Recommendation.

only timely and exhausted claim that Baker can assert under Title VII is based on Baker's September 2014 request for FMLA leave that was initially denied but then later granted. Accordingly, Baker's retaliation claim based on allegations that she was forced to participate in interviews following her return from FMLA leave based on her sex is not properly before the Court.

In its motion for summary judgment, MARTA argues, among other things, that Baker has failed to present sufficient evidence to make out the first element of her prima facie case of Title VII retaliation by failing to show evidence of opposition to an unlawful employment practice. (Doc. 22-1 at 13-14). In response, Baker argues that she opposed an unlawful employment practice when she (1) reported harassing comments made about her in regard to her age by younger employees; (2) complained to a supervisor that the attendance portion of her personnel records was included in the records used in her annual review while a younger employee's attendance records were not included; and (3) was treated differently from a male counterpart when she returned to work following FMLA leave. (Doc. 28 at 7-9).

Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated

in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). With respect to the first two incidents upon which Baker relies in her opposition, those activities deal with opposition to purported age-based discrimination, and those actions do not equate to practices made unlawful by Title VII; therefore, they are not actionable under Title VII.[5] See 42 U.S.C. §§ 2000e-2(a), 2000e-3. With respect to her claim that she was treated differently from a male counterpart when she returned to work following FMLA leave, Baker appears to be referring to the incident her 2012 when she complained about having to undergo a more extensive return-to-work examination than a younger, white, male colleague. Baker did not raise this incident in her EEOC charge and, as discussed above, any claim based on this incident is procedurally barred.

Finally, to the extent Baker seeks to raise a claim of constructive discharge based on her retirement, such a claim fails because it was not raised in the Complaint. See Gilmour, 382 F.3d at 1314-15; Iraola, 325 F.3d at 1286. Even if

---

[5] In addition, Baker's complaint that MARTA included her attendance records in her annual review was not raised in her Complaint or in her charge of discrimination and is, therefore, not properly before the Court. See Gilmour v. Gates, McDonald, & Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (a plaintiff may not raise new claims in response to defendant's motion for summary judgment).

Baker's constructive discharge claim could be raised in response to MARTA's motion for summary judgment, it fails because Baker has failed to put forth evidence establishing that the alleged retaliation "forced" her to take an early retirement.  See Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009) (to succeed on a constructive discharge claim, the work environment and conditions of employment must be so unbearable that a reasonable person in her position would be compelled to resign).

Accordingly, **I RECOMMEND** that MARTA's Motion for Summary Judgment on Baker's Title VII retaliation claim (Count 4) be **GRANTED**.

## B.     Section 1983 Claims (Counts 2 and 4)

In Counts 2 and 4, Baker raises claims for sex discrimination and retaliation asserting that MARTA, a local governmental agency, violated her rights under the Equal Protection Clause of the Fourteenth Amendment.  Baker asserts her Fourteenth Amendment constitutional right to equal protection, by and through Section 1983, which provides the statutory remedy to address violations of the Fourteenth Amendment.  See 42 U.S.C. § 1983; Cross v. State of Ala., 49 F.3d 1490, 1507 (11th Cir. 1995) (the Equal Protection Clause of the Fourteenth Amendment prohibits unlawful sex discrimination in public employment).

Baker's sex discrimination claim in Count 2 is based on her allegations that she was forced to engage in interviews regarding her decision to use FMLA benefits because she is female and that as a result, she was "compelled to retire earlier than she had planned." (Compl. ¶¶ 43, 44). Baker's retaliation claim in Count 4 is based on her allegation that after she complained to her superiors that she felt discriminated against based on her sex (on some unspecified date), she was forced to participate in interviews following her return from FMLA leave (presumably in 2011 and/or 2012) that "resulted in Plaintiff's early retirement." (Compl. ¶¶ 58, 59).

1.  Section 1983 Statute of Limitations (Count 2)

Unlike Title VII and the ADEA, Baker's Fourteenth Amendment Equal Protection claims brought under Section 1983 are not subject to an administrative exhaustion requirement. See Grandison v. Smith, 779 F.2d 637, 642 (11th Cir. 1986). Instead, constitutional claims brought under Section 1983 are subject to the statute of limitations governing personal injury actions in the state where the action has been brought. McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). In Georgia, Section 1983 claims are governed by Georgia's two-year statute of limitations for personal injury claims. Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 1996).

Thus, the only claims properly before the Court with respect to alleged violations of Baker's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment are those based on events that took place after **September 15, 2013** (two years before September 15, 2015, the date the Complaint was filed). In her Complaint, however, the latest incident complained of is in July 2012, well outside the Section 1983 statute of limitations. Thus, Baker's Complaint contains no factual allegations that could serve as the basis of a timely Section 1983 claim.[6]

2. Merits of Baker's Section 1983 Sex Discrimination Claim (Count 2)

The Equal Protection Clause of the Constitution prohibits unlawful sex discrimination in public employment. See Cross, 49 F.3d at 1507. Title VII and Section 1983 claims have the same elements where, as here, the claims are based on the same set of facts. See Quigg v. Thomas Cty Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016); Bryant v. Jones, 575 F.3d, 1281, 1296 n.20 (11th Cir. 2009) ("discrimination claims . . . brought under the Equal Protection Clause . . . or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, are subject to the same standards of proof and employ the same analytical framework").

---

[6]     It is possible, however, that the June 2012 incident described in the Complaint is the same as the June 2014 incident described in the EEOC charge and the affidavit. But even assuming that the date in the Complaint was wrong, Plaintiff's claim still fails as a matter of law.

Baker has presented summary judgment evidence of two incidents that occurred during the two-year limitations period: the May and June 2014 incidents where Baker's leave time was misclassified. (Baker Aff. ¶¶ 12, 13, 14; PSMF 15, 18). Baker also makes arguments in her brief regarding the September 2014 improper denial of FMLA leave (which was later granted). Accordingly, these are the only incidents that can even arguably serve as a basis for Baker's sex discrimination and retaliation claims under Section 1983.

As with Baker's Title VII claims for sex discrimination, there is no evidence before the Court to establish a prima facie case for sex discrimination. Nothing about the May, June, and September incidents demonstrate discrimination based on sex. Moreover, the undisputed evidence shows that Baker was not subject to an adverse employment action. With regard to the May 2014 incident, Baker was issued a written warning when her time off was "erroneously" classified as sick time. (Baker Aff. ¶ 12). While Baker argues that the misclassification of her leave "might" have resulted in her termination and subsequent loss of benefits, she put forth no evidence of any actual economic harm or change of benefit that might amount to an adverse employment action. See Medearis v. CVS Pharmacy, Inc., 646 F. App'x 891, 897-98 (11th Cir. 2016) (unpublished) (store manager did not suffer adverse employment action where the district manager and others cut the

operating hours at his store, issued written reprimands, laughed at him, and threatened to fire him within a year). It is undisputed that Baker ultimately received approval for her requested leave. Moreover, Plaintiff resigned from MARTA; she was not fired, demoted, or replaced.

Accordingly, I **RECOMMEND** that MARTA's motion for summary judgment be **GRANTED** on Baker's sex discrimination claim under Section 1983 (Count 2).

3.    Merits of Baker's Section 1983 Retaliation Claim (Count 4)

In Count 4 of the Complaint, Baker asserts claims of retaliation under both Title VII and Section 1983 based on the same allegations–that after Baker complained to her superiors that she felt discriminated against based on her sex (on some unspecified date), she was forced to participate in interviews following her return from FMLA leave (presumably in 2011 and/or 2012) that "resulted in Plaintiff's early retirement." (Compl. ¶¶ 58, 59). Baker's retaliation claim under Section 1983 fails for the same reasons that her Title VII retaliation claim fails. The complaints upon which she relies are time barred, both under Title VII as discussed earlier, but also under the longer two-year statute of limitations applicable to Section 1983 claims.

Even assuming that Baker showed that she engaged in some timely protected conduct, Baker fails to show that she suffered any adverse employment action related to her protected expression. The May and June 2014 incidents where Baker's leave time was misclassified, along with the September 2014 incident where Baker's request for FMLA leave was initially denied, would not dissuade a reasonable worker from making or supporting a charge of discrimination and, therefore, do not constitute an adverse action for the purposes of a retaliation claim. See Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008). I also find there is no evidence to suggest that any of these incidents are even arguably related to any protected expression in which Baker may have engaged.

Thus, I **RECOMMEND** that MARTA's motion for summary judgment be **GRANTED** on Baker's retaliation claim under Section 1983 (Count 4).

## C.     FMLA Claims (Counts 5 and 6)

### 1.     FMLA Statute of Limitations

Claims arising under the FMLA ordinarily must be brought within two years of the alleged unlawful practice, except that willful violations of the FMLA may be brought within three years of the violation. 29 U.S.C. §§ 2617(c)(1), (2).

Baker argues "that Defendant's interference with her FMLA rights was intentional." (Doc. 28 at 11-12). In the Complaint, she alleges generally that that

MARTA "willfully" took actions against her by allowing her "superiors to berate her about her decision to take FMLA leave," "forcing Plaintiff to participate in interviews that required her to give details about her decision to take FMLA leave," and "purposely misallocat[ing]" her FMLA time. (Compl. ¶¶ 64, 65, 66, 73, 74, 75, 76). Baker argues these allegations are sufficient to trigger the three-year limitations period. (Doc. 28 at 11-12).

The term "willful" is not defined in the text of the FMLA statute, nor has the Eleventh Circuit defined "willful" in the FMLA context. The Supreme Court has held that in the context of claims brought under a different employment statute, the Fair Labor Standards Act ("FLSA"), an employer acts willfully when it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681 (1988). If an employer acts unreasonably, but not recklessly, in determining its legal obligation under the FLSA, then its actions should be considered willful. Davia v. Mendenez, 717 F.3d 1179, 1185 (11th Cir. 2013) (citing McLaughlin, 486 U.S. at 135 n. 13). In the FLSA context, "[f]or the willfulness issue on which the statute of limitations turns, the burden is on the employee." Rodriguez v. Farm Stores, 518 F.3d 1259, 1274 (11th Cir. 2008). I have followed the lead of many other district courts and applied the FLSA standard

of willfulness to the FMLA claims. See Liu v. Univ. of Miami, 138 F. Supp. 3d 1360, 1373-74 (S.D. Fla. 2015); Stewart v. T-Mobile, USA, No. 2:11-CV-03655, 2015 WL 1345662, at *4 (N.D. Ala. Mar. 23, 2015); Majors v. Morgan Tire & Auto, Inc., No. CV 104-047, 2005 WL 2709634, at *11 (S.D. Ga. Oct. 21, 2005).

In response to MARTA's motion for summary judgment, Baker asserts only that "Baker believes that Defendant's interference with her FMLA rights was intentional" and characterizes the action underlying her FMLA claims as being taken "either intentionally or negligently." (Doc. 28 at 11-12). Applying the FLSA definition of willfulness to the FMLA claims before the Court, it is evident that Baker's vague and conclusory statements are insufficient to establish a willful violation. While at the motion to dismiss stage, general averments as to the willfulness of the violation are sufficient to trigger the FMLA's three-year statute of limitations, see, e.g., Perrymond v. Lockheed Martin Corp., No. 09-CV-1936-TWT, 2010 WL 925178, at *1 (N.D. Ga. Mar. 9, 2010), at the summary judgment stage, the plaintiff must present evidence to show that the employer intentionally or recklessly violated her rights under the FMLA, see Stewart, 2015 WL 1345662, at *4. Here, Baker failed to carry her summary judgment burden to demonstrate, through competent evidence, that MARTA intentionally or recklessly violated her rights under the FMLA. It is undisputed that MARTA's Benefits Office corrected

all of its errors regarding the misclassification of Baker's leave, and there is no evidence that Baker was ever prevented from taking any requested FMLA leave during her employment with MARTA. The fact that MARTA may have misclassified or miscalculated Baker's leave on more than one occasion is simply not enough to create a triable issue of fact as to willfulness.

Thus, applying the two-year statue of limitations, the only claims properly before the Court with respect for violations of the FMLA are those based on events that took place after **September 15, 2013** (two years before September 15, 2015, the date the Complaint was filed). As discussed previously, Plaintiff has presented evidence with respect to only three incidents during that time period: the May, June, and September 2014 incidents where Baker's FMLA leave time was misclassified.

2. The Merits of Baker's FMLA Interference Claim (Count 5)

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). Leave "may be taken intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(b)(1). Unless the employer already knows that the employee has an

FMLA-approved reason for leave, the employee must communicate the reason for leave to the employer. Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005). The employer must then ascertain whether the employee's absence actually qualifies for FMLA protection. Id. at 1383.

The FMLA prohibits employers from interfering with, restraining, or denying "the exercise of or the attempt to exercise" of a substantive right under the Act. 29 U.S.C. § 2615(a)(1). To prove FMLA interference, an employee must demonstrate that she was denied a benefit to which she was entitled under the FMLA and that she was prejudiced by the violation in some way. Evans v. Books-A-Million,762 F.3d 1288, 1295 (11th Cir. 2014). "Interfering with" the exercise of an employee's rights includes not only refusing to authorize FMLA leave, but also discouraging an employee from using such leave. Lowery v. Strength, 356 F. App'x 332, 334 (11th Cir. 2009) (unpublished) (citing 20 C.F.R. 825.220(b)); see Hines v. City of Atlanta, No. 1:11-CV-3757-WSD, 2013 WL 11904716, *5 (N.D. Ga. Feb. 4, 2013) (citing cases). To show prejudice from a FMLA violation, a plaintiff needs only to demonstrate some harm remediable by either "damages" or "equitable relief." Evans, 762 F.3d at 1296.

MARTA argues that it is entitled to summary judgment on Baker's FMLA interference claim because Baker's numerous requests for FMLA leave were all

approved and, therefore, she cannot establish that she was denied any benefit. (Doc. 22-1 at 18). Baker argues in response that MARTA interfered with her use of FMLA leave by questioning her need to utilize FMLA leave; by failing to correctly calculate and code her leave; by discouraging her from taking FMLA leave; and by harassing her for exercising her FMLA rights. (Doc. 28 at 11-12).

Here, it is undisputed that all of Baker's FMLA leave requests were approved, either initially or after Baker followed up with MARTA's Benefits Office, and that Baker voluntarily retired from her position at MARTA. The evidence cited by Baker that the misclassification of her leave time put her at risk of losing her job and retirement benefits is insufficient to raise a genuine issue of material fact as to whether Baker was denied a benefit to which she was entitled and suffered some harm. See Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1275 (11th Cir. 1999) ("[A] plaintiff suffers no FMLA injury when she receives all the leave she requests."). To the extent she relies on her general allegations of harassment, those allegations are either barred by the statute of limitations or are too vague to survive summary judgment. Absent evidence of some actual harm suffered that is remediable either by "damages" or by "equitable relief," MARTA is entitled to summary judgment on Baker's FMLA interference claim. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89-90, 122 S. Ct. 1155,

1161 (2002) (stating that the FMLA "provides no relief unless the employee has been prejudiced by the violation. . . . The remedy is tailored to the harm suffered.").

Because Baker has failed to establish the existence of a triable issue of fact regarding whether she was denied a benefit to which she was entitled under the FMLA or that she suffered any resulting harm, **I RECOMMEND** that MARTA's Motion for Summary Judgment on Baker's FMLA interference claim (Count 5) be **GRANTED**.

      3.    The Merits of Baker's FMLA Retaliation Claim (Count 6)

An FMLA retaliation claim protects an employee from discrimination by her employer on the basis that the employee engaged in activity protected by the Act. Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). Unlike a plaintiff asserting a claim of interference, a plaintiff bringing a retaliation claim under the FMLA faces the increased burden of showing that the adverse employment action was motivated by an impermissible retaliatory or discriminatory animus. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010).

In the absence of direct evidence, a claim that an employee has been retaliated against for attempting to exercise her rights under the FMLA is analyzed

using the McDonnell-Douglas framework applied to Title VII retaliation claims. Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir. 2000); Walker v. Elmore Cnty. Bd. of Educ., 379 F.3d 1249, 1251 (11th Cir. 2004). To state a prima facie case for retaliation under the FMLA, a plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment decision; and (3) there was a causal connection between the two. Krutzig, 602 F.3d at 1234.

MARTA argues that it is entitled to summary judgment on Baker's FMLA retaliation claim because Baker fails to establish each element of the prima facie case. (Doc. 22-1 at 17-18). In response, Baker argues that MARTA's decision to deny her request to remove her attendance records from the records used for her annual review and Baker's decision to retire constitute adverse actions. (Doc. 28 at 13-14).

Baker's claim of retaliation under the FMLA fails because there is no evidence before the Court that Baker suffered any harm from the refusal to remove Baker's attendance records from the records used for her annual review. Moreover, the undisputed evidence before the Court shows that that Baker voluntarily retired from work, received a raise during each year of her employment in connection with her annual review, and that at the time of her retirement

received the maximum salary available for her pay grade. Because Baker has failed to provide substantial evidence for a jury to reasonably find that she was subjected to an adverse action for exercising her rights under the FMLA, I **RECOMMEND** that MARTA's Motion for Summary Judgment on Baker's FMLA retaliation claim (Count 6) be **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendant MARTA's Motion for Summary Judgment (Doc. 22) be **GRANTED**.

**SO REPORTED AND RECOMMENDED**, this 13th day of December, 2016.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE